Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

FILED
11 MAY -6 PM 3: 23
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

-----------------------------------------------------X

GARY REDWEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

      Plaintiff,

vs.

SINO CLEAN ENERGY INC., BAOWEN REN, WEN FU, ALBERT CHING-HWA PU, HON WAN CHAN, WENJIE ZHANG, ZHIXIN JING, AND PENG ZHOU,

      Defendants.

-----------------------------------------------------X

CASE No.:

CV11- 03936 PA (SSx)

CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES LAWS

JURY TRIAL DEMANDED

Plaintiff Gary Redwen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included,

among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sino Clean Energy, Inc. ("SCEI" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of SCEI between April 6, 2009 and May 5, 2011, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws.

2.     Throughout the Class Period, Defendants made materially false and misleading statements about the Company by vastly overstating the Company's revenues and operations.

3.     Defendants overstated their revenues for FY 2009 by a factor over 20. Defendants fabricated customers.  Defendants owned "ghost factories" that had no operations and were used strictly for show.

4.     On April 25, 2011, rumors began circulating that a report produced after extensive due diligence including unannounced on-site visits to Sino Clean Energy showed that the Company had a far less production than what it reported in SEC filings.

5.     On April 26, a version of the report was disseminated to subscribers of analyst firm Geoinvesting.

6.     On April 28, analyst Alfred Little published a report which included more detailed factual allegations and Chinese tax filings allegedly showing that the Company had no or nearly no operations.

Class Action Complaint for Violations of the Federal Securities Laws

7. When the Company's true financial condition was revealed, the Company's stock price fell. Between April 25 and April 28, the Company's stock price fell from $4.12 per share to $2.47 per share, more than 40%, damaging investors.

8. Defendants replied with a detailed letter on May 3, 2011. The letter invited shareholders to view security camera footage of its factories in operation. The Company's stock price rose dramatically.

9. The very next day, Alfred Little showed that the footage was fabricated. The footage showed rain. During the period in which the Company claimed the footage was shot, there had been no rain.

10. The Company was caught red handed, and the Company's stock price fell again to close at $2.59 on very heavy volume on May 5, 2011.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

13. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)-(d) and under the rule of law announced in *Investors Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985).

14. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

# PARTIES

15. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased SCEI securities at artificially inflated prices during the Class Period and has been damaged thereby.

16. Defendant SCEI is a Nevada Corporation whose principal place of business is Room 1605, Suite B, Zhengxin Building, No. 5 Gaoxin 1st Road, Gaoxin District, Xi'an, Shaanxi Province, PRC.

17. SCEI, through its subsidiaries, purports to produce coal water slurry fuel ("CWSF"), a type of clean coal that provides heating and energy solution for residential, commercial, and industrial uses in China.

18. Beginning on June 14, 2010, the Company's stock was actively traded on the NASDAQ under ticker "SCEI."  Prior to that date, the stock was actively traded on the Over-the-Counter Bulletin Board ("OTC:BB").

19. Defendant Baowen Ren ("Ren") was at all relevant times the Company's CEO and Chairman of the Board.

20. Defendant Hon Wan Chan ("Chan") was the Company's CFO from December 2008 to February 2010. Chan has been as the Company's Vice President of Finance since February 2010.

21. Defendant Wen (Wendy) Fu ("Fu") has been the Company's CFO since February 2010.

22. Defendant Albert Ching-Hwa Pu ("Pu") was a director of the Company since November 2009, and served as the Chairman of the Company's Audit Committee until his abrupt resignation on April 15, 2011.  Pu was also CFO of the disgraced company China Integrated Energy, Inc ("China Integrated").  At the request of NASDAQ, trading in China Integrated's stock has been halted while it conducted an internal investigation of allegations of widespread fraud, including allegations that it materially overstated its operations just as SCEI did.  The internal investigation team resigned.  As did China Integrated's registered independent

Class Action Complaint for Violations of the Federal Securities Laws

accountant, KPMG, who also indicated that investors should no longer rely on China Integrated's audited 10-K for FY 2010.   Both cited as their reason for withdrawal China Integrated's lack of cooperation in the internal investigation.

23.   Defendant Wenjie Zhang ("Zhang") was a director of the Company since October 2006, and currently serves as a member of the Company's Audit Committee.

24.   Defendant Zhixin Jing ("Jing") was a director of the Company since March 2011, and currently serves as a member of the Company's Audit Committee.

25.   Defendant Peng Zhou ("Zhou") was director of the Company since October 2006, and was the Chief Operating Officer of Shenyang Energy, a subsidiary of SCEI, since October 2009.

26.   Ren, Chan, Fu, Pu, Zhang, Jing and Zhou are collectively referred to as the "Individual Defendants."

27.   During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of SCEI and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.   Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

28.   The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and

Class Action Complaint for Violations of the Federal Securities Laws

were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with SCEI, each of the Individual Defendants had access to the adverse undisclosed information about SCEI's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about SCEI and its business issued or adopted by the Company materially false and misleading.

## SUBSTANTIVE ALLEGATIONS

29.     The Class Period begins on April 6, 2009 when the Company filed its annual report for the fiscal year ending December 31, 2008 with the SEC on Form 10-K ("2008 10-K.") The 10-K was signed by defendants Ren, Chan, Zhang and Zhou and, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by defendants Ren and Chan, who each attested both to the accuracy of the financial statements and that all fraud was disclosed.

30.     On May 15, 2009, the Company filed its quarterly report for the quarter ending March 31, 2009 with the SEC on Form 10-Q ("Q1 2009 10-Q.") The 10-Q was signed by defendants Ren and Chan and, pursuant to the SOX, was separately certified by defendants Ren and Chan attesting to the accuracy of the financial statements

31.     On August 14, 2009, the Company filed its quarterly report for the quarter ending June 30, 2009 with the SEC on Form 10-Q ("Q2 2009 10-Q.") The 10-Q was signed by defendants Ren and, pursuant to the SOX, was separately certified by defendants Ren and Chan attesting to the accuracy of the financial statements.

32.     On October 22, 2010, the Company filed its amended annual report for the fiscal year ending December 31, 2009 with the SEC on Form 10-K/A ("2009 10-K/A.")  The 10-K/A was signed by defendant Ren who was also attorney-in-fact of defendants Chan, Zhang and Zhou and, pursuant to the SOX, was separately

certified by defendants Ren and Chan attesting to the accuracy of the financial statements.

33.     On November 16, 2009, the Company filed its quarterly report for the quarter ending September 30, 2009 with the SEC on Form 10-Q ("Q3 2009 10-Q.") The 10-Q was signed by defendants Ren and, pursuant to the SOX, was separately certified by defendants Ren and Chan attesting to the accuracy of the financial statements.

34.     On April 9, 2010, the Company filed its annual report for the fiscal year ended December 31, 2009 with the SEC on Form 10-K ("2009 10-K.")  The 10-K was signed by defendants Ren, Fu, Zhang, Zhou and Pu and, pursuant to the SOX, was separately certified by defendants Ren and Fu attesting to the accuracy of the financial statements.

35.     On May 17, 2010, the Company filed its quarterly report for the quarter ending March 31, 2010 with the SEC on Form 10-Q ("Q1 2010 10-Q.") The 10-Q was signed by defendants Ren and, pursuant to the SOX, was separately certified by defendants Ren and Fu attesting to the accuracy of the financial statements.

36.     On August 13, 2010, the Company filed its quarterly report for the quarter ending June 30, 2010 with the SEC on Form 10-Q ("Q2 2010 10-Q.") The 10-Q was signed by defendants Ren and, pursuant to the SOX, was separately certified by defendants Ren and Fu attesting to the accuracy of the financial statements.

37.     On November 12, 2010, the Company filed its quarterly report for the quarter ending September 30, 2010 with the SEC on Form 10-Q ("Q3 2010 10-Q.") The 10-Q was signed by defendants Ren and, pursuant to the SOX, was separately certified by defendants Ren and Fu attesting to the accuracy of the financial statements.

38.     On December 22, 2009, the Company filed a final prospectus with the SEC on Form 424B (the "December 22 Prospectus") for the sale of 5.465 Million shares of stock, with proceeds of $ 26,682,862.50 going to SCEI.

39.     On March 25, 2011, the Company filed a final prospectus with the SEC on form 424B (the "March 25 Prospectus") for the resale of 3,258,143 shares of stock.

40.     On April 5, 2011, the Company filed its annual report for the fiscal year ending December 31, 2010 with the SEC on Form 10-K ("2010 10-K.")  The 10-K was signed by defendants Ren, Fu, Zhang, Zhou, Pu and Jing and, pursuant to the SOX, was separately certified by defendants Ren and Fu attesting to the accuracy of the financial statements.

41.     Each of these SEC filings contained materially false and misleading statements.

42.     SCEI materially overstated its revenue in every SEC filing beginning with the 2008 10-K.

43.     SCEI purported to have revenue of $13.8 Million in fiscal 2008. Documents filed with the Chinese State Administration of Taxation ("SAT") show that Shaanxi Suo'ang New Energy Enterprises Co., Ltd ("SSNE"), SCEI's only operating subsidiary producing CWFS in 2008, only earned $0.06 million in 2008.

44.     SCEI purported to have revenue of $46 Million in fiscal 2009.  Its SAT filings, however, show that SSNE, SCEI's major operating subsidiary producing CWFS in 2009, only earned $0.18 million in 2008.

45.     SCEI purported to have revenue of $ 24.5 Million in the first quarter of 2010. Its SAT filings, however, show that SSNE, SCEI's major operating subsidiary producing CWFS during the period, only earned $0.33 million in the first quarter of 2010.

46.     SCEI also materially overstated its operation in every SEC filing listed above, another proof of its overstated revenue.

7

Class Action Complaint for Violations of the Federal Securities Laws

47.     International Financials Research and Analysis Group ("IFRA")'s four months surveillance of SCEI's three factories showed that the Company has no or nearly no operation.

48.     Additional proof of SCEI's poor operation is its fabricated customer list. SCEI claims to have five customers in Shenyang. In reality, it has only customer.

49.     Last but not the least, SCEI reported that it has paid income tax to Chinese government in amount of $24,760, $1,161,346 and $2,641,771 for the FY 2008, 2009 and first quarter of 2010, respectively. However, Chinese SAT's records showed 0 payment for those period.

50.     Thus, SCEI either made material false statement in its SEC filing, or it has failed to pay such tax to Chinese government, facing potential severe civil and criminal penalty.

51.     The 0 payment of income tax also indicated that SCEI's operation was not making any profit, another discrepancy with its SEC filings.

52.     SCEI is a complete fraud. Its revenue, net income and operation are only in its SEC filings.

### THE FRAUD IS REVEALED

53.     On April 25, 2011, rumors began circulating that a report produced after extensive due diligence including unannounced on-site visits to Sino Clean Energy's factories showed that the Company had far less production than what it reported in SEC filings.

54.     On April 26, a version of the report was published by analyst firm Geoinvesting. The report's basis-in-fact were observations of the Company's factories.  The report claimed, among other things, that:

- SCEI's Tongchuan factory has only one production line, rather than three production lines as the Company claimed

Class Action Complaint for Violations of the Federal Securities Laws

- SCEI has only 6-7 employees, rather than 86 employees as the Company claimed.

- Four of the Company's largest customers could not be confirmed or found.

55.     Based on these facts, the report concluded that the Company had no operations.

56.     On April 28, 2011, analyst Alfred Little also published a report setting forth a host of detailed allegations that stated that the Company had lied on more or less all of its SEC filings. The Report listed a number of red flags and evidence contradicting the Company's annual reports and public statements filed with the SEC and issued to U.S. investors.  The evidence included:

a.   International Financials Research and Analysis Group ("IFRA") conducted four month's surveillance of SCEI's three CWSF factories in China, showing SCEI has "nothing more than backyard-sized money losing operations."

b.   SCEI's SEC filings claim that its Tongchuan factory has 550,000 ton production capacity -- 90 truckloads per day. However, IFRA's surveillance shows that in January and February 2011, the factory produced an average 4 tanker truckloads per day.

c.   According to SCEI's SEC filings, its Shenyang factory has 300,000 ton capacity, meaning at least 49 truckloads per day. However, IFRA's surveillance shows that the factory has only one tanker truck in operation even during the busy season.

d.   SCEI claims its Dongguan factory has 300,000 ton capacity. But IFRA's surveillance shows the factory has been no production activity up to end of April 2011.

e.   SCEI claimed to have five customers in Shenyang. In reality, it has only one customer for which the only tank truck is serving.

f.   Chinese tax filings allegedly showing that the Company had no or nearly no operations.

57.    On the same, the Company issued press release announcing it will issue a shareholder letter responding to allegations made in Geoinvesting's report.

58.    On May 3, 2011, Alfred Little published a follow-up report revealing that SCEI's CEO and Chairman's Ponzi scheme had defrauded Chinese Investors of over $20 million, potentially exposing SCEI to civil and criminal liability under Chinese law. This report referenced the April 28 report.

59.    The same day, the Company posted a letter to investors on its investor relationship website, responding to allegations in Geoinvesting and Alfred Little's report. The response did not mention Alfred Little's May 3 article.  However, it did provide footage allegedly taken by the Company's security camera in the course of business showing that the Company had operations.

60.    On May 4, 2011, Alfred Little pointed out that the videos produced by management were of rainy days.  During the period in which management claimed to have filmed the videos, according to Chinese state weather reports, there had been no rain.

61.    On May 5, 2011, the Company issued a press release, threatening to take an action against Alfred Little and Geoinvesting.

62.    Four hours later, Alfred Little furthered its allegation by explaining how IFRA collected the surveillance videos under various dangerous and costly conditions.

63.    From April 25, 2011 to April 28, 2011, SCEI's stock price fell from $4.12/share to $2.47/share, over 40% on extraordinarily heavy trading volume, damaging investors.

64.    Although the Company's share price recovered in the wake of its false and misleading press release dated May 3, 2011, it fell again on May 4 to May 5 to $2.59.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of SCEI during the Class Period and who were damaged thereby.   Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

66.    The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, SCEI's securities were actively traded on the NASDAQ or the OTC:BB.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.   Members of the Class may be identified from records maintained by SCEI or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

67.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

68.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

69.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SCEI; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

70.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**Applicability of Presumption of Reliance:**

**Fraud-on-the-Market Doctrine**

71.   At all relevant times, the market for SCEI's  common stock was an efficient market for the following reasons, among others:

(a)   SCEI's stock met the requirements for listing, and is listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   During the class period, on average, over several hundreds of thousands of shares of  SCEI stock were traded on a weekly basis, demonstrating a very active and broad market for SCEI stock and permitting a *very strong* presumption of an efficient market;

(c)   As a regulated issuer, SCEI filed periodic public reports with the SEC and was eligible and did file short form registration statements with the SEC on Form S-3 during the Class Period;

(d)   SCEI regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through

Class Action Complaint for Violations of the Federal Securities Laws

other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)  SCEI was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)  Numerous NASD member firms were active market-makers in SCEI stock at all times during the Class Period; and

(g)  Unexpected material news about SCEI was rapidly reflected and incorporated into the Company's stock price during the Class Period.

72.  As a result of the foregoing, the market for SCEI's common stock promptly digested current information regarding SCEI from all publicly available sources and reflected such information in SCEI's stock price.  Under these circumstances, all purchasers of SCEI's common stock during the Class Period suffered similar injury through their purchase of SCEI's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against All Defendants

73.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.  This claim is brought against SCEI and all of the Individual Defendants.

75.  During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as

Class Action Complaint for Violations of the Federal Securities Laws

alleged herein; and (2) cause plaintiff and other members of the Class to purchase SCEI's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

76.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SCEI's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

77.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SCEI as specified herein.

78.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SCEI's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SCEI and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business

that operated as a fraud and deceit upon the purchasers of SCEI's common stock during the Class Period.

79.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

80.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SCEI's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking

those steps necessary to discover whether those statements were false or misleading.

81.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SCEI's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of SCEI's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SCEI common stock during the Class Period at artificially high prices and were or will be damaged thereby.

82.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SCEI's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SCEI common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

83.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

84.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

Class Action Complaint for Violations of the Federal Securities Laws

85.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of

### The Exchange Act Against the Individual Defendants

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     The Individual Defendants acted as controlling persons of SCEI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

88.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

89.  As set forth above, SCEI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

90.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

91.  This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Awarding such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 6, 2011                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com


Counsel for Plaintiff

Class Action Complaint for Violations of the Federal Securities Laws

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV11- 3936 PA (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY REDWEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF(S)<br><br>v.<br><br>SINO CLEAN ENERGY INC., BAOWEN REN, WEN FU, ALBERT CHING-HWA PU, HON WAN CHAN, WENJIE ZHANG, ZHIXIN JING, AND PENG ZHOU,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV11-03936 PA (SSx)<br><br><br>SUMMONS |

TO: DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Laurence M. Rosen_____, whose address is _333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

MAY - 6 2011

Clerk, U.S. District Court

JULIE PRADO

Dated: _____    By: _____

Deputy Clerk

*(Seal of the Court)*

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| GARY REDWEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | SINO CLEAN ENERGY INC., BAOWEN REN, WEN FU, ALBERT CHING-HWA PU, HON WAN CHAN, WENJIE ZHANG, ZHIXIN JING, AND PENG ZHOU, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Laurence M. Rosen, Esq. (SBN 219683), THE ROSEN LAW FIRM, P.A., 333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071, Tel: (213) 785-2610, Fax: (213) 226-4684, Email: lrosen@rosenlegal.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Class Action for Violations of the Federal Securities Laws, 15 U.S.C. §78j(b) and 78t(a), 17 C.F.R. §240.10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-03936

**FOR OFFICE USE ONLY:**  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Switzerland |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date ~~04/29/2011~~ 5/6/11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |