**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-3936 PA (SSx) | Date | July 9, 2013 |
| Title | Gary Redwen, et al. v. Sino Clean Energy, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Paul Songco | | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:** MOTION FOR FINAL APPROVAL OF SETTLEMENT

A fairness hearing was held on July 1, 2013, on the Motion for Final Approval of Settlement, Plan of Allocation, and Class Certification and the Motion for Award of Attorneys' Fees and Expenses filed by plaintiff Perritt Micro Cap Opportunities Fund ("Lead Plaintiff"). [Docket Nos. 81, 83.] Defendants Sino Clean Energy, Inc., Baowen Ren, Wen Fu, Hon Wan Chan, Peng Zhou, Wenjie Zhang, Albert Ching-Hwa Pu, and Zidong Cao (collectively, "Defendants") have not filed an opposition. Larry Vincent has filed an Objection to the Proposed Settlement. [Docket No. 87]. The Claims Administrator has received five requests for exclusion. The Objector, Larry Vincent, did not appear at the hearing.

## I. FACTUAL & PROCEDURAL BACKGROUND

On May 6, 2011, this shareholder class action was filed, alleging violations of the federal securities laws by Defendants. On July 5, 2011, Perritt Micro Cap Opportunities Fund moved to be appointed lead plaintiff, and on August 8, 2011, the Court appointed Lead Plaintiff and approved its choice of counsel, Gold Bennett Cera & Sidener LLP, as Lead Counsel.

Lead Counsel conducted an investigation that included a review of Sino Clean Energy's filings with the United States Securities and Exchange Commission, analyst research reports, news articles and other public data, and legal analysis of the claims against Defendants and their potential defenses. On September 8, 2011, Lead Plaintiff filed the First Amended Class Action Complaint ("FAC") for violations of the federal securities laws. The FAC asserted claims on behalf of investors who acquired the common stock of Sino Clean Energy pursuant to the December 21, 2010 Registration Statement and Prospectus for the secondary offering of 5,465,000 shares of the Company offered at a price of $5.25 per share (the "Offering").

The FAC alleged that Defendants issued materially false and misleading statements regarding the business of Sino Clean Energy in that the revenues for Fiscal Year 2009 were overstated, several of the purported factories were in fact "ghost factories" with no business purpose, and Defendants identified the existence of certain customers which are not doing any business with Sino Clean Energy. The Offering was alleged to have contained material misstatements and omitted material information in

violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. The FAC further alleged that the individual defendants controlled Sino Clean Energy at the time of the Offering.

On October 24, 2011, Sino Clean Energy moved to dismiss the claims asserted against it arguing, among other things, that Lead Plaintiff had failed to adequately meet Rule 9(b)'s heightened pleading standard for the claim of false profit and revenue reports in the SEC filings. On January 30, 2012, the Court granted the motions to dismiss, and Lead Plaintiff was granted leave to amend their Section 11 and Section 15 claims.

On March 5, 2012, Lead Plaintiff filed the Second Amended Class Action Complaint ("SAC") which added substantial factual detail in support of the claims asserted for violations of Sections 11 and 15 of the Securities Act. On April 20, 2012 Sino Clean Energy again moved to dismiss the Section 11 and 15 claims and also moved to strike certain portions of the SAC. On June 4, 2012, the Court denied the motion to dismiss and the motion to strike. Thereafter, Sino Clean answered the SAC. In light of the serious issues raised by the fact that Sino Clean Energy and the individual defendants are all residents of the People's Republic of China, with no assets in the United States, the parties agreed to participate in a mediation conducted by Jed D. Melnick on October 25, 2012. The parties reached an agreement in principle to settle in late November 2012, and the Stipulation and Agreement of Settlement dated January 27, 2013 has been filed with this Court.

The Stipulation and Agreement of Settlement ("Settlement Agreement") provides for the payment of $2,000,000.00 into an escrow account to be distributed pursuant to the terms of the agreement. The Settlement Agreement permits Lead Counsel to seek an award of fees and costs from the Court, to be paid from the total settlement fund. Lead Counsel requests an award of attorneys' fees of 25% of the settlement amount, and $49,566.78 in expenses.

Following preliminary approval of the settlement agreement in March, the class was notified of the settlement and its terms. To date, five putative class members have notified the Claims Administrator of an intent to opt out and one putative class member has presented an objection to the Settlement Agreement. The Court has received only one opposition to the amount of the fees and expenses requested. The Court is obligated to conduct a careful review of the reasonableness of the requested attorneys' fees and costs. See In re Washington Public Power Supply System Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs.").

Lead Plaintiff now moves for class certification and final approval of the class settlement. Defendants support the motion. Having considered the parties' submissions, and for the reasons that follow, the Court grants Lead Plaintiff's Motions.

## II. Class Certification for Settlement Purposes

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-3936 PA (SSx) | Date | July 9, 2013 |
| Title | Gary Redwen, et al. v. Sino Clean Energy, Inc., et al. | | |

The parties request that the Court certify a settlement class under Federal Rule of Civil Procedure 23(b)(3). Specifically, Lead Plaintiff seeks certification of the following settlement class:

> All persons or entities who acquired the common stock of Sino Clean pursuant to and/or traceable to the Registration Statement and Prospectus for the secondary offering of 5,465,000 shares of the Company offered at a price of $5.25 per share, and which became effective December 21, 2010 (the "Offering"), and who were damaged thereby (the "Class"). Excluded from the Class are the following persons or entities: (i) Defendants; (ii) the parents, successors, subsidiaries, affiliates and assigns of Sino Clean; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) any person who was an officer or director of Sino Clean, at the time of the Offering; (v) any underwriter, or affiliate of an underwriter, who offered, sold, or purchased Sino Clean common stock in the Offering; and (vi) any firm, trust, corporation, or other entity in which any of the Defendants has a controlling interest or had a controlling interest at the time of the Offering. Also excluded from the Class are any persons or entities who exclude themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

(Stipulation and Agreement of Settlement, ¶ 1(g) and Amendment to the Stipulation and Agreement of Settlement.)

To obtain class certification, Plaintiffs must demonstrate that they have met the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3). See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010), rev'd on other grounds 131 S. Ct. 795, 178 L. Ed. 2d 530 (2010); Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Federal Rule of Civil Procedure 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, Federal Rule of Civil Procedure 23(b)(3) requires the Court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). "Rule 23 'provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.'" Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (citation omitted).

Where, as here, the parties have reached a settlement agreement prior to class certification, "the court 'must pay undiluted, even heightened, attention to class certification requirements' because, unlike in a fully litigated class action suit, the court will not have future opportunities 'to adjust the class,

informed by the proceedings as they unfold.'" Alberto v. GMRI, Inc., 252 F.R.D. 652, 658 (E.D. Cal. 2008) (quoting Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." Id. (quoting Berry v. Baca, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)); see also Amchem, 521 U.S. at 622 (observing that nowhere does Rule 23 say that class certification is proper simply because the settlement appears fair). Nonetheless, the Court is mindful that "'the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.'" In re THQ, Inc. Secs. Litig., 2002 U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. Mar. 22, 2002) (citations omitted).

A. Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements are satisfied. General Tel. Co. v. Falcon, 457 U.S. 147, 160-61, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). This rigorous analysis, as the Ninth Circuit explained in Dukes, "does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 581 (discussing Falcon, 457 U.S. at 160-61). Thus, while a court at the class certification stage is prohibited from making determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met. Id., 603 F.3d at 582. Plaintiffs must demonstrate to the Court's satisfaction, and not merely allege, that the suit is appropriate for class resolution.[1/] Id.

1. Numerosity

---

[1/] Although neither the Ninth Circuit nor the Supreme Court has decisively attached a standard of proof to Rule 23's requirements, many courts apply the preponderance standard. See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 321-22 (3d Cir. 2008); Mekhitarian v. Deloitte & Touche (ICS), LLC, 2009 U.S. Dist. LEXIS 131754 (C.D. Cal. Nov. 3, 2009), at *14 ("Because the Court finds that the preponderance standard of Rule 23(b)(3) is not met, it does not decide if all of the Rule 23(a) factors are satisfied."). The Court believes that this is the appropriate burden of proof.

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members individually is "impracticable." Fed R. Civ. P. 23(a)(1). No exact numerical cut-off is required; rather, the specific facts of each case must be considered. In re Cooper Cos. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing General Tel. Co. of Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)). However, numerosity is presumed where the plaintiff class contains forty or more members. Id. (citing Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)). "Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations 'plainly suffice' to meet the numerosity requirement." Id. (quoting Schwartz v. Harp., 108 F.R.D. 279, 281-82 (C.D. Cal. 1985)).

Here, Lead Plaintiff's allegations meet the standard for numerosity. To date, the Claims Administrator has sent a total of 19,144 Claim Packages to potential class members and nominees. (Declaration of Carole K. Sylvester ("Sylvester Decl."), ¶ 10.) Furthermore, the claims are asserted on behalf of all Class Members who purchased or acquired the common stock of Sino Clean traceable to the Registration Statement and Prospectus for the Secondary Offering of 5,465,000 shares. When a corporation has millions of shares trading on a national exchange, a court "certainly may infer that far more than 40 individuals purchased stock over the course of more than nine months." In re Cooper, 254 F.R.D. at 634 (finding numerosity requirement met on the basis of evidence demonstrating that defendant corporation had more than 36 million shares of stock outstanding during class period); In re Unioil Secs. Litig., 107 F.R.D. 615, 618 (C.D. Cal. 1985) (finding numerosity requirement satisfied where "several million" shares of defendant's stock were purchased during the class period). Therefore, the Court finds that the Settlement Class is sufficiently numerous to render joinder impracticable.

2. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class." Haley v. Medtronic, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

Here, Lead Plaintiff lists four issues common to the class: (1) whether Defendants engaged in acts or conduct in violation of the securities laws; (2) whether the Offering misrepresented the financial results of Sino Clean Energy; (3) whether the Offering price of the securities was artificially inflated because of Defendants' conduct; and (4) whether the members of the Class sustained damages as a result of Defendants' alleged misconduct and, if so, the proper measure of damages. Given that these legal issues are shared by the putative class members and are based on a common core of salient facts, the commonality requirement is met. See Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975); Schaefer v. Overland Express Family of Funds, 169 F.R.D. 124, 128 (S.D. Cal. 1996) (finding

commonality requirement met where class members had "the same basic legal claims (securities fraud) based on the same nucleus of operative fact").

3. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members"; they "need not be substantially identical." Hanlon, 150 F.3d at 1020. However, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." In re Paxil Litigation, 212 F.R.D. 539, 549 (C.D. Cal. 2003). The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

In the present case, the injuries to Lead Plaintiff and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. Lead Plaintiff alleges that it, like the rest of the class, paid artificially-inflated prices for Sino Clean Energy common stock acquired pursuant to and/or traceable to the Offering. Lead Plaintiff's claims and the claims of Settlement Class are based on the same legal theories and would be proven by the same evidence. Accordingly, the typicality requirement is met.

4. Adequacy of representation

Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiffs: (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." Dukes, 509 F.3d at 1185. At the heart of this requirement is the "concern over settlement allocation decisions." Hanlon, 150 F.3d at 1020.

Here, Lead Plaintiff is a sophisticated institutional investor with a substantial financial stake in the litigation, and there does not appear to be any conflict of interest between Lead Plaintiff and the proposed Settlement Class. Additionally, Lead Counsel has extensive experience and expertise in complex securities litigation and class action proceedings. Lead Counsel appears well qualified and able to conduct this litigation. Also, the settlement allocation is reasonable because the proposed distribution provides formulas for calculating the recognized claim of each class member, based on each person's purchases and sales of Sino Clean Energy securities on the open market during the class period and when they sold. Accordingly, the Court finds that Lead Plaintiff is an adequate representative of the Settlement Class. Thus, Lead Plaintiff has satisfied the prerequisites of Rule 23(a).

B. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022. This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions must "present a significant aspect of the case [that] they can be resolved for all members of the class in a single adjudication." Id. The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023. Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

Here, the substantial issues which are essential to the claims of all class members, such as whether the challenged statements in the Offering documents are untrue or misleading, are common to the class. Given the identical claims shared by the members of the Settlement Class and the potential problems with enforcing a judgment in the People's Republic of China, a class action is superior to individual litigation for adjudicating the controversy. See Epstein v. MCA, Inc., 50 F.3d 644, 668 (9th Cir. 1995) (finding securities fraud claims based on misstatements leading to identical claims by numerous shareholders fit Rule 23 requirements "like a glove"), rev'd on other grounds Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 134 L. Ed. 2d 6, 116 S. Ct. 873 (1996); Hanlon, 150 F.3d at 1023 (finding a class action superior because, "[e]ven if efficacious, these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs"). Indeed, courts have consistently embraced the class action device as a superior method of adjudicating federal securities fraud claims. See Basic v. Levinson, 485 U.S. 224, 250, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1998); Blackie, 524 F.2d at 903. Accordingly, common questions of law and fact predominate over individual ones, and a class action constitutes a superior method of adjudication. Lead Plaintiff has thus satisfied the requirements of Rule 23(b)(3).

## III. Fairness of the Proposed Class Settlement

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, the Court considers a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. Also, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). The Ninth

Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

A. The strength of Lead Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation

Lead Counsel states that any further litigation of this action would be time-consuming, complex, and involve substantial risks to the class members. Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation. Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" In re Flag Telecom Holdings, 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 5, 2010) (discussing also the inherent difficulty of proving loss causation and damages) (quoting In re Top Tankers, Inc., Sec. Litig., 2008 U.S. Dist. LEXIS 58106, at *4 (S.D.N.Y. July 31, 2008).

In addition, Lead Plaintiff faced extraordinary discovery costs because all of the Defendants are in the People's Republic of China, and most of the documents are in Chinese. Continued litigation would delay payment to the class members and increase the amount of attorneys' fees. Lead Plaintiff states that there are limited insurance funds available, Sino Clean Energy has no assets in the United States, and the company is facing a liquidity crisis. Finally, Lead Plaintiff would face significant obstacles in enforcing any judgment against the Defendants' assets in China, and thus the proposed Settlement alleviates the risk that class members could receive nothing. These considerations weigh in favor of settlement approval.

B. The amount offered in the Settlement Agreement

Lead Counsel believes that Settlement Agreement is a substantially beneficial result for the class members. Pursuant to the Settlement Agreement, a total of $2 million will constitute the settlement fund. From this amount will be paid notice and claims administration costs, any authorized attorneys' fees and litigation expenses, taxes, and any other fees and expenses authorized by the Court. Based on the damages expert, Lead Plaintiff believes that the Settlement Class' maximum provable damages would be approximately $14 million. Thus, the settlement fund awards Class Members a recovery of approximately 14.26%. In light of the inherent risks of class action securities litigation, and considering the limited insurance funds available and the difficulty of enforcing a judgment in the People's Republic of China, the Court finds that this settlement amount is well within the range of possible approval. See, e.g., Goldstein v. Tongxin International, Ltd., No. 11-CV-348 (C.D. Cal.) ($3 million settlement, entirely paid by insurers); In re Merrill Lynch Research Rep. Sec. Litig., 2007 U.S. Dist. LEXIS 9450, at *10 (S.D.N.Y. Feb. 1, 2007) (noting that a settlement representing 6.25% of estimated damages was "at the higher end of the range of reasonableness of recovery in class action securities litigations"); In re Paine Webber Ltd. P'ships Litig., 147 F.3d 132, 132 (2d Cir. 1998)) (noting that a recovery between 7% and 20% is "well within range of reasonableness").

C. The extent of discovery completed and the stage of the proceedings

Lead Plaintiff and their counsel have conducted a thorough investigation of the claims asserted in the action. Lead Counsel indicates that they have reviewed Sino Clean Energy's filings with the Securities and Exchange Commission, analyst research reports, news articles, and other public data. The parties further explored their relative legal and factual positions through the exchange of mediation statements and presentations.

The Settlement Agreement was reached only after Defendants filed multiple motions to dismiss, after some discovery, and after protracted negotiations through a neutral mediator. It thus appears that the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative.

D. The experience and views of counsel

The Court finds that Lead Counsel has had sufficient experience with securities class action litigation to appropriately assess the legal and factual issues in this matter and determine whether the Settlement Agreement serves the interests of the Class Members. Given that Lead Counsel believes the proposed Settlement Agreement is both fair and adequate, this also weighs in favor of approval.

E. Collusion between the parties

To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self interests," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961.

Here, there is no evidence of overt misconduct. On the contrary, it appears that the proposed Settlement was the product of informed, arms-length negotiations between the parties. The Settlement Agreement is the result of significant negotiations between the parties, including a lengthy mediation before a neutral mediator, and was finalized only after some motion practice had occurred. Moreover, Lead Plaintiff is to receive no preferential treatment in the processing, calculation or reimbursement of its claims. Based on the information presently available to it, the Court finds that the Settlement Agreement is the product of non-collusive negotiations.

F. Reaction of Class Members to Proposed Settlement

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. Nat'l Rural Telecomms. Cooperative. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong

presumption that the terms of a proposed class settlement action are favorable to the class members."); see also Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

On March 13, 2013, the Court entered an Order granting the Motion for Preliminary Settlement Approval of Class Action. This Order approved the mailing of the Notice to potential Class Members, the publication of the Summary Notice in the print edition of *The Investors' Business Daily*, and the establishment of a Settlement website at www.gilardi.com/sinoclean. Pursuant thereto, 19,144 copies of the Notice and Proof of Claim have been sent to potential Class Members and their nominees since April 4, 2013. (Sylvester Decl., ¶ 10-13.) The Summary Notice was timely published in *The Investor's Business Daily* on April 9, 2013. The Notice was also timely published on the website, along with the Preliminary Approval Order, and included deadlines.

The deadline for Class Members to exclude themselves from the Class was June 7, 2013, and the deadline to object to the Settlement was also June 7, 2013. As of June 21, 2013, there has been only one objection, and only five requests for exclusion. Neither the objection nor the requests for exclusion clearly establish membership in the Class. The objector Larry Vincent ("Objector") has not provided any evidence that he is a Class Member. Lead Plaintiff raises the issue of standing in its Supplemental Memorandum in Further Support. Gilardi & Co. LLC, the Claims Administrator, has researched all claim packages received in this case and no Proof of Claim has been received from Larry Vincent. (Supplemental Declaration of Carole K. Sylvester).

Even if the objection should not be overruled for lack of standing, the objection is overruled on other grounds. The Objector appears to argue that: (1) the *de minimis* threshold for a payable claim is grossly unfair; (2) that the imposition of the *de minimis* threshold created a conflict between the class representative and the class; (3) the fee should be reduced because the settlement fund is small and the common benefit is difficult to determine; and (4) the fee petition is not timely.

The Objector admits confusion regarding the formula for compensation, but argues that if Objector's calculations are correct, only those class members owning a substantial number of shares are compensated. The Objector further argues that such compensation is grossly unfair, and that any class member who files a claim should receive some distribution. The Settlement does have a minimum claim amount, or a *de minimis* threshold, established to be $20. The *de minimis* threshold for payment set by the Plan of Allocation is commonly used in distributions from private securities litigation settlement funds in order to preserve the Settlement Fund from being overburdened with potentially disproportionate administrative expenses. (Declaration of Bruce H. Cozzi.) Such a threshold is beneficial to the class as a whole since it saves the settlement fund from being depleted by the administrative costs. Additionally, the Objector does not support his objection to the fee amount with specific facts or legal theories. The Ninth Circuit benchmark fee for class action settlements in this type of case is 25%. Finally, the fee petition was timely as it was filed before the deadline to object and in compliance with this Court's Preliminary Approval Order. Therefore, the objections are overruled.

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores Inc. v. Visa U.S.A., 396 F.3d 96, 118 (2d Cir. 2005) (citing 4 Newberg §11.41, at 108). "The Ninth Circuit has approved settlements over objections if the settlement otherwise meets the fairness requirements." In re Portal Software, Inc. Sec. Litig., C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) (approving settlement where there are no objections and only one opt-out was made from the class of roughly 17,937 members); see, e.g. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. Nev. 2000) (only one opt-out and only a handful of objectors out of 5,400 potential class members); Churchill Vill., L.L.C. v. GE, 361 F.3d 566, 577 (9th Cir. Cal. 2004) (500 opt-outs and 45 objections out of approximately 90,000 notified class members). Here, there are only five opt-outs and one objection out of the approximately 19,144 potential class members.

The overall positive reaction of Class Members to the settlement is strong evidence that the Settlement is fundamentally fair and reasonable.

G. Plan of Allocation

Lead Plaintiff also seeks approval of the Plan of Allocation ("Plan") of the Settlement proceeds. The Court finds that the Plan, which distributes the proceeds of the settlement fund on a *pro rata* basis, based upon the dates of their purchase and sale transactions, is fair and reasonable. The Plan is set forth in full in the Notice mailed to potential Class Members. (Exhibit A to Sylvester Decl.) Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole - the plan must be fair, reasonable, and adequate. In re Omnivision Tech., 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008); Class Plaintiffs v. Seattle, 955 F.2d 1268, 1284 (9th Cir. 1992). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." In re Heritage Bond Litig., 2005 WL 1594403 (internal quotes and citations omitted). "Therefore, . . . a plan of allocation ... fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." Id. (internal quotes and citations omitted).

Here, the proposed Plan was prepared by a damage expert retained by Lead Plaintiff who has significant experience in drafting such plans, in consultation with Lead Counsel. It provides a reasonable basis for Class Members to recover their *pro rata* damages based upon the dates of their purchase and sale transactions as compared with the disclosure dates identified in the complaint. This allocation, which does not disproportionately favor any member or members of the class, is fundamentally fair.

## III. Attorneys' Fees

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-3936 PA (SSx) | Date | July 9, 2013 |
| Title | Gary Redwen, et al. v. Sino Clean Energy, Inc., et al. | | |

Lead Counsel seeks $500,000 (25%) in attorneys' fees as a percentage of the common fund created by the settlements. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon, 150 F.3d at 1029. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Mircrosoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

Here, Lead Counsel requests a fee award of 25% of the $2 million settlement. Lead Counsel supports the reasonableness of the request by arguing that the fees are lower than they would be under a lodestar calculation. Lead Counsel contends that a lodestar calculation, which multiplies the reasonable number of hours worked by a reasonable hourly rate, would result in a fee request of $537,050.50. Lead Counsel's lodestar calculation includes approximately 877.25 hours billed by attorneys and paralegals. Lead Counsel seeks hourly rates of $200 an hour for professional support staff; $400 an hour for an associate; and up to $800.00 an hour for partners. Lead Counsel submitted a Declaration and Time Report in support of the number of hours billed. This lodestar calculation appears to be reasonable, and the lodestar cross-check supports the requested fee.

Under the percentage method, Lead Counsel seeks the Ninth Circuit's 25% benchmark. Considering the results achieved, the risk of litigation, the skill required and the quality of work, the contingent nature of the fee and the financial burden carried by the Lead Plaintiff, and awards made in similar cases, the Court finds that the requested fee is reasonable. Thus, the Court awards 25% of the settlement fund to compensate Lead Counsel's services.

## IV. Litigation Expenses and Costs

Here, Lead Counsel seeks $49,566.78 in litigation expenses and costs. This amount appears to be reasonable. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Expenses which should be considered part of an attorney's overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client.").

Lead Counsel seeks reimbursement of expenses for mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage, messengers, and filing fees. (Declaration of Solomon B. Cera ("Cera Decl."); Exhibit 3 to the Cera Decl.) These fees are reasonable, and the Court finds that they should be reimbursed.

The Court therefore grants Lead Counsel's request for $49,566.78 in expenses.

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-3936 PA (SSx) | Date | July 9, 2013 |
| Title | Gary Redwen, et al. v. Sino Clean Energy, Inc., et al. | | |

## Conclusion

For all of the foregoing reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable. The Court therefore grants Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation, and Class Certification. The Court also grants Lead Plaintiff's Motion for Award of Attorneys' Fees and Expenses and awards $500,000.00 in fees to Lead Counsel to be paid from the settlement fund. Additionally, the Court allows Lead Counsel to recover $49,566.78 in litigation expenses and costs.

This Order constitutes the Order and Final Judgment contemplated by the Settlement Agreement. The Court dismisses the action with prejudice and without costs except as herein provided. Lead Plaintiff's Counsel and the Claims Administrator are directed to administer the Settlement Agreement in accordance with its terms and provisions.

IT IS SO ORDERED.